IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | |
|---|---|
| WAYNE A. LEE, <br> Petitioner, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Criminal No. 1:09CR84 <br> Civil Action No. 1:10CV1269 |

## MEMORANDUM OPINION

This case is before the Court on Petitioner Wayne A. Lee's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion").

On February 13, 2009, Petitioner Wayne A. Lee ("Petitioner"), after consultation with his defense counsel, pleaded guilty to a single-count criminal information charging him with mail fraud, in violation of 18 U.S.C. § 1341. Petitioner pleaded guilty pursuant to a written Plea Agreement. The factual basis for Petitioner's guilty plea was described in a Statement of Facts, filed on February 13, 2009. Petitioner signed both the Statement of Facts and the Plea Agreement, as did defense counsel and counsel for the United States. Throughout Petitioner's criminal proceedings, he was represented

1

by defense counsel Pleasant S. Brodnax, III.

Petitioner's Statement of Facts specified that from September 2006 through May 2007, Petitioner submitted four false mortgage applications. These applications overstated Petitioner's income and falsely stated that each of the homes to be purchased with the loan proceeds would be Petitioner's primary residence. As part of these transactions, Petitioner also submitted false settlement statements certifying that the information on the HUD-1 forms accurately listed all receipts and disbursements made in the transactions. Petitioner failed to disclose, however, that he would receive kickbacks, representing proceeds disbursed to the sellers at settlement. Petitioner received a total of $263,800 in kickbacks. Relying on Petitioner's false statements, the lenders made mortgage loans to Petitioner. Within approximately one year after his first purchase, Petitioner defaulted on each loan. The lenders subsequently foreclosed on the properties, incurring substantial losses.

In addition to securing mortgage loans in his own name, Petitioner also assisted a family member in the preparation and submission of three false loan applications. Mortgage lenders relied on these false statements, issuing loans to the family member totaling $1,680,000. Petitioner received post-settlement

kickbacks totaling $132,000 relating to the purchase of these three homes.

On May 15, 2009, Petitioner appeared before this Court for sentencing. He received a sentence of 33 months of incarceration—the lowest end of the guidelines range of 33 to 41 months. At the conclusion of the sentencing hearing, Petitioner signed and filed a Restitution Judgment. On May 25, 2009, defense counsel filed a Motion for Reconsideration of Sentence, which was denied by written order filed June 9, 2009. On May 26, 2009, Petitioner filed a Notice of Appeal. He subsequently filed a motion voluntarily dismissing the appeal. The Fourth Circuit Court of Appeals issued the formal mandate dismissing the appeal on November 17, 2009.

Under 28 U.S.C. § 2255(a), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.

Here, Petitioner's § 2255 Motion is based entirely on alleged ineffective assistance of counsel. The Sixth Amendment provides, in relevant part, that in all criminal prosecutions,

"the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." In Strickland v. Washington, 466 U.S. 688, 686 (1984), the Supreme Court held that the Sixth Amendment right to counsel includes the right to the effective assistance of counsel. The Supreme Court employs a "highly deferential" standard for assessing ineffective-assistance-of-counsel claims, requiring demonstration of inadequate performance and actual prejudice, both of which must be established in order to demonstrate ineffective assistance of counsel. Id. at 686, 700. To establish a claim for ineffective assistance of counsel, therefore, the defendant must prove that: (1) defense counsel's conduct fell below an objective standard of reasonableness (requiring an evaluation of defense counsel's performance from his perspective at the time of the alleged error and in light of all the circumstances); and (2) the deficient performance caused the defendant actual prejudice. Id. at 687-91.

Actual prejudice is demonstrated by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Under Strickland, "a court must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. In assessing whether a defendant has overcome this presumption, "the analysis of counsel's performance typically must be comprehensive; i.e., not narrowly limited to a review of counsel's failings." Id. at 689. Most importantly, the burden of proof lies with the defendant as to both prongs of the Strickland standard. United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

In Petitioner's § 2255 Motion, he argues that defense counsel provided ineffective assistance of counsel by allegedly failing to investigate and challenge the loss calculation under United States Sentencing Guidelines § 2B1.1(b)(1). Petitioner has taken the position that his actions did not result in any actual or intended losses, and that successor lenders cannot be considered victims for the purposes of loss calculations. Contrary to Petitioner's allegations, the record demonstrates that defense counsel zealously and effectively advocated on Petitioner's behalf, resulting in a significant reduction in the loss calculation. The record further demonstrates that Petitioner knew the amount of the loss calculation and agreed that the calculation was correct, explicitly acknowledging as

much by signing the Plea Agreement, Statement of Facts, and Restitution Judgment.

Petitioner's fraud resulted in a total loss of $1,073,475 to the victim lenders. This amount was calculated as early as January 28, 2009, in a document containing a breakdown of the loss calculation, which counsel for the United States e-mailed to defense counsel. Although the document listed accrued interest, and lender fees and advances, these amounts were not included in the final loss calculations. On February 4, 2009, after reviewing the loss calculation, defense counsel forwarded the document to Petitioner. After reviewing the loss calculations himself, Petitioner repeatedly affirmed that the total loss amounted to $1,073,475. On February 13, 2009, Petitioner signed the written Plea Agreement and Statement of Facts, both of which reflected a total loss of $1,073.475. On May 15, 2009, Petitioner signed the Restitution Judgment, which reflected the same loss calculation.

In his § 2255 Motion, Petitioner argues that payments he made toward the mortgage loans should have been credited against the total loss amount. He specifically references approximately $76,924.59 in payments made from October 2006 through April 2007. Here, the victim lenders reported the amount of unpaid principal several months after April 2007. These amounts took

into account any payments made toward principal. If Petitioner made payments between October 2006 and April 2007 that were applied entirely or mostly toward interest owed on his loans, then those payments would not have reduced the amount of unpaid principal.

As described in paragraph 27 of the Presentence Investigation Report ("PSR"), in addition to securing mortgage loans in his own name, Petitioner also assisted a family member in the preparation and submission of three false loan applications. Mortgage lenders relied on these false statements, issuing loans to the family member totaling $1,680,000. The original PSR, filed on March 31, 2009, calculated the total loss amount by adding the full amount of the family member's loans, $1,680,000, with the losses attributable to Petitioner's fraud, $1,073,475, resulting in a total loss of $2,753,475. Under § 2B1.1(b)(1), a loss amount between $2,500,000 and $7,000,000 increases the offense level total by 18 points, resulting in a guidelines range of 44 to 51 months incarceration.

On April 28, 2009, defense counsel submitted by e-mail an objection to paragraphs 25 and 27, objecting to the loss amount by inclusion of the total value of the property fraudulently obtained rather than the actual loss to the lenders.

On May 4, 2009, the United States Probation Office filed an addendum to the PSR. The addendum adopted defense counsel's position and included only known losses from the family member's properties, resulting in a total loss of only $1,330,863. Under § 2B1.1(b)(1), losses between $1,000,000 and $2,500,000 increase the offense level total by 16 points, resulting in a guidelines range of 33 to 41 months incarceration. Defense counsel's April 28, 2009 objection, therefore, resulted in Petitioner receiving a significantly lower term of incarceration.

On September 28, 2008, Petitioner was the victim of a home invasion and assault, which resulted in several physical injuries, including brain and nerve damage. In light of Petitioner's medical condition, defense counsel filed a Sentencing Memorandum requesting a reduced sentence under § 5H1.4 of the Sentencing Guidelines and 18 U.S.C. § 3553(a). In support of the Sentencing Memorandum, defense counsel submitted letters from two of Petitioner's medical providers, as well as twenty-eight character letters from Petitioner's family and friends.

The Fourth Circuit Court of Appeals cautioned in Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987), that courts should not "second guess" these types of strategic decisions. In Williams, the defense counsel failed to move to strike after the

prosecution's case. Id. at 947. The appellate court held that the defense counsel's actions "must be viewed as part of his strategy." Id. at 949. Even if the defense counsel simply did not consider the motion to strike, such a decision would not constitute ineffective assistance of counsel. Id. at 950 (citing Strickland, 466 U.S. at 687). "Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another." Id. (citing Strickland, 466 U.S. at 689).

Defense counsel here had already reduced Petitioner's recommended guideline range by objecting to the loss calculation, as reflected in the March 31, 2009 Presentence Investigation Report. In light of that result, defense counsel made a strategic decision to pursue an additional reduction based on Petitioner's medical condition. Defense counsel's decision was reasonable given the totality of the circumstances, and constitutes effective representation under Strickland.

Petitioner has not overcome Strickland's "strong presumption" that defense counsel's conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. Petitioner here has not demonstrated to a reasonable probability that, but for any errors, the result of the proceeding would have been different.

In his § 2255 Motion, Petitioner argues that the property located at 2196 Armitage Court sold at a higher value than the amount reported by the victim lender. At the time when Petitioner's loss calculations were originally prepared, the United States reasonably relied on amounts provided by victim lenders. For the property located at 2196 Armitage Court, this amount was reported as $304,275. Petitioner alleges that the property actually sold for $348,800, a difference of $44,525. As a preliminary matter, defense counsel had no reason to question the accuracy of the amount reported by the victim lender. Further, even if the conflict is resolved in Petitioner's favor and the total loss amount as reflected in the May 4, 2009 PSR ($1,330,863) is decreased by $44,525, the recalculated loss would still be higher than the $1,000,000 loss threshold under § 2B1.1(b)(1)(I). Petitioner's recommended guidelines range would therefore remain unchanged.

"A federal court in a habeas proceeding must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle [that individual] to relief." <u>United States v. Magini</u>, 973 F.2d 261, 264 (4th Cir. 1992) (internal citation omitted). With respect to Petitioner's claims, an evidentiary hearing is not required because the record before the Court is adequate to dispose of the allegations. <u>See, e.g., Mueller v.</u>

Angelone, 181 F.3d 557, 586-87 (4th Cir. 1999) (concluding, in the context of a § 2254 claim, that where the petitioner fails to raise factual contentions that would require the district court to grant habeas relief, then the district court may resolve the petition without an evidentiary hearing). No evidentiary hearing is necessary and the Petitioner's Motion should be denied.

An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
March 7, 2011